IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RICHARD MUSSO,**  )
)
    Plaintiff,  )
)
v.  ) No. 10 C 3236
)
**EXCELLENCE IN MOTIVATION, INC.,**  )
**ROBERT J. MILLER, JOHN E. KERNAN,**  )
**III, AND BEVERLY F. SHILLITO,**  )
)
    Defendants.  )

### MEMORANDUM OPINION AND ORDER

On May 26, 2010, defendants removed this action from the Circuit Court of Cook County, where plaintiff had filed a ten count complaint arising out of his employment termination by defendants. Now before me is defendants' motion to dismiss count III, which alleges violations of the Illinois Wage Act, 820 ILCS 115/1, *et seq.*, count V, which is styled "Breach of Contract (Good Faith and Fair Dealing), and count VIII, which alleges violations of the Personnel Record and Review Act, 820 ILCS 40/1, *et seq*. For the following reasons, the motion is granted in part.

I.

A motion to dismiss tests the sufficiency of the complaint, not its merits. *See, e.g., Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In resolving defendants' motion, I must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *McMillan*

v. *Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). Plaintiff must, nevertheless, allege sufficient factual material to suggest plausibly that it is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

## II. The Illinois Wage Act

Defendants argue that this claim must be dismissed because they are not "Illinois employers," and are therefore outside the reach of the statute. The cases cited in support of this claim's dismissal indeed leave little doubt that the Illinois Wage Act does not extend to out-of-state employers. *DeGeer v. Gillis*,--F. Supp. 2d.---2010 WL 1609914 at *12 (N.D. Ill. Apr. 21, 2010)(Bucklo, J.); *Maxwell v. Vertical Networks, Inc.*, No. 03 C 5715, 2005 WL 950634, *10 (N.D. Ill. Mar. 18, 2005) (Ashman, MJ.); *Khan v. Van Remmen, Inc.*, 756 N.E.2d 902, 912 (Ill. App. Ct. 2001).[1] What none of these cases resolves, however, is whether a corporation that, although a foreign citizen, not only conducts substantial business in Illinois, but also maintains offices and a registered agent in the state,[2] is an "Illinois employer" for the purposes of the statute.

---

[1] Defendants' citation to *Hertz v. Friend*, 130 S. Ct. 1181 (2010), warrants no discussion, as it deals with the federal courts' exercise of diversity jurisdiction over corporations, not with the scope of the Illinois Wage Act.

[2] These are the facts alleged in the complaint, which I assume to be true for the purposes of defendants' motion.

In *DeGeer*, I dismissed the plaintiff's Wage Act claim on the ground that the defendants--all individuals--were citizens of foreign states, and that they could not be liable under the Wage Act based on allegations that they were agents of non-party companies alleged to be in-state. I had no need to consider, in the context of that case, under what circumstances an entity organized in another state could be deemed an Illinois employer for the purposes of the Wage Act.

In *Maxwell*, the court made clear that out-of-state employers were outside the purview of the Wage Act, then dismissed a statutory claim against a California company with its principal place of business in California. The court's analysis focused on whether the Wage Act could be asserted against an out-of-state employer (noting the paucity of judicial authority on the issue) and did not address the question of whether a foreign corporation headquartered in another state could be deemed an Illinois employer based on business it conducts in Illinois. Indeed, for all that the opinion reveals, the *Maxwell* plaintiff may have conceded that the defendant was an out-of-state employer.

In *Khan*, the Illinois Appellate Court concluded that a "labor placement agency" incorporated in Delaware, with its principal place of business in Wisconsin, no offices or phone number in Illinois, and which was not "doing business" in Illinois for jurisdictional purposes, also was not an Illinois employer for

3

purposes of the Wage Act. Notably, the court explicitly limited its holding to the facts of that case, stating, "we do not purport to create an all-encompassing definition of 'employers in this State' for purposes of the Wage Act. Rather, we determine only that under the circumstances of this case plaintiff has not pleaded any facts from which we could conclude that [either of the defendants] was an employer in this state." 756 N.E.2d at 913. Accordingly, defendants' reliance on *Khan* is particularly misplaced, because that case expressly left open the possibility that on a different set of facts, a foreign corporation *could* be considered an Illinois employer.

Finally, the Wage Act provides that "an officer or agent who knowingly permits an employer to violate the Act shall be deemed to be an employer." *DeGeer*, 2010 WL 1609914 at *13 (quoting *Porter v. Time4Media, Inc.*, No. 05 C 2470, 2006 WL 3095750, at *6 (N.D. Ill. Oct. 30, 2006)) (Hibbler, J.). In *DeGeer*, as noted above, I dismissed the plaintiff's Wage Act claim against the individual defendants because not only were the individuals citizens of foreign states, but plaintiff had brought no claims against any in-state employer on whose behalf these individuals had allegedly acted. By contrast, in this case, plaintiff alleges violations of the Wage Act by an in-state company and its agents. Nothing in *DeGeer* prevents him from pursuing this claim.

In sum, I conclude that it would be premature at this stage to dismiss plaintiff's Wage Act claim on the ground that defendants are not Illinois employers under the statute.

### III. Breach of Contract

Defendants attack count V of plaintiff's complaint on several grounds. Their first argument is that the claim should be dismissed because Illinois law recognizes no independent cause of action for the breach of good faith and fair dealing that is separate from the duties imposed by contract. This argument is somewhat mystifying, since the count is in fact styled "Breach of contract (good faith and fair dealing)," and thus explicitly identifies it as a breach of contract claim. Accordingly, defendants' first argument has no merit.

Defendants advance alternative grounds for this claim's dismissal, however, which do have merit. They argue that the count fails to state a claim for breach of contract, and that to the extent it adequately pleads such a claim, it is duplicative of counts I and II, each of which asserts a breach of an oral compensation agreement. To the extent count V alleges a breach of EIM's obligation to pay plaintiff bonuses he claims are due pursuant to his 2009 and 2010 compensation agreements, I agree that the count is duplicative of counts I and II.

The remainder of count V identifies a host of additional written agreements, including the "Class A Shareholder Agreement,"

the "Stock Option Plan," the "Class B Shareholder Plan," and the "Third Articles."[3] Plaintiff asserts that EIM exercised the contractual discretion it had under these agreements in a manner inconsistent with its duties of good faith and fair dealing. Although the basic thrust of plaintiff's claim is intelligible, the factual allegations on which the claim rests are muddled and conspicuously lacking in relevant detail. In particular, it is unclear from the allegations that plaintiff has suffered any compensable injury at all, and even if he has, there is little basis from which to conclude that his injury was the result of an "opportunistic" termination.

Plaintiff clearly believes that EIM failed to pay, pursuant to his 2009 and 2010 compensation agreements, bonuses he had allegedly earned prior to his discharge; but this is the same breach, and the injury, that are the subject of counts I and II. The remainder of count V asserts that his termination was somehow contrary to his reasonable expectations arising out of the Class A Shareholder Agreement, the Stock Option Plan, the Class B Shareholder Plan, and the Third Articles, and that it caused the value of his stock in EIM to be less than it would have been had he remained employed with the company. These allegations are

---

[3]The count also identifies the "Grant Agreement," the "Subscription Agreement," and the "Non-Compete Agreement." The relevance of these documents, if any, is unclear.

insufficient to state a viable breach of contract claim based on an "opportunistic" termination.

While it is true that an employee at will may not be deprived by an "avowedly opportunistic discharge" of compensation for work already performed, *LaScola v. U.S. Sprint Communications*, 946 F.2d 559, 566 (7th Cir. 1991), this cause of action amounts to a narrow exception to the general rule of at-will employment, and plaintiff must present "specific facts regarding his entitlement" to the compensation he claims he is owed. *Id*. at 567. Plaintiff alleges that the value (at some indefinite point in time) of his Class A and Class B shares "would be significantly higher" if he had remained employed on and after March 16, 2010. Nowhere does plaintiff explain the relevance of that date to the value of his shares,[4] nor does he indicate the amount, if any, he has received or expects to receive in return for his shares, or the amount he believes he would be entitled to under the identified agreements, but for his bad-faith discharge. It is not even clear from the complaint whether plaintiff's shares have been redeemed at all. Without any clear assertion of what plaintiff believes he is owed, or factual allegations suggesting that he had already earned his entitlement to that amount, plaintiff has not raised his right to

---

[4] I understand that this date is significant with respect to counts I and II, since March 15, 2010 is allegedly the date upon which plaintiff's bonus would have been paid had he not been discharged seven days earlier.

relief "above the speculative level." *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 555 (2007).

## IV. Personnel Record Review Act

Defendants move to dismiss this claim on the ground that plaintiff did not plead exhaustion of his administrative remedies. Plaintiff responds that failure to exhaust is an affirmative defense that he need not have anticipated in his complaint. To this, defendants reply that because exhaustion is a jurisdictional requirement, plaintiff's failure to plead it is fatal to his claim.

Defendants' jurisdictional argument--which appears to be an ill-conceived attempt to distinguish *Robinson v. Morgan Stanley*, No. 06 C 5158, 2007 WL 2815839 (N.D. Ill. Sept. 24, 2007), is flawed from the outset. In *Robinson*, the court held precisely that failure to exhaust administrative remedies is an affirmative defense to a PRRA claim, and thus is not an appropriate basis for dismissal under Rule 12(b)(6). Conspicuously, they offer neither analysis nor authority to support their bald conclusion that the exhaustion requirement contained in the PRRA amounts to a limitation on the jurisdiction of the courts, as opposed to a garden-variety procedural limitation on litigants.[5] I see no basis for their conclusion.

---

[5] I note, further, that defendants moved to dismiss under Rule 12(b)(6), not under Rule 12(b)(1).

Defendants cite only two PRRA cases, neither of which supports their position. In both *Anderson v. Board of Education of the City of Chicago*, 169 F.Supp.2d 864 (N.D. Ill. 2001), and Turner v. Health Care Service Corp., No. 06 C 2399, 2009 WL 1210624 (May 4, 2009), the court dismissed the plaintiff's PRRA claim under Rule 12(b)(6) for failure to exhaust administrative remedies. But neither of these cases remotely holds that the exhaustion of administrative remedies is a jurisdictional prerequisite under the statute.[6] In *Anderson*, the question presented was whether the PRRA contains any exhaustion requirement *at all*. The plaintiff in that case responded to the defendant's motion to dismiss with the argument that the statute did not require him to pursue administrative remedies prior to filing suit. The *Anderson* court construed the issue as a matter of first impression, then dismissed plaintiff's claim under Rule 12(b)(6) after concluding that administrative exhaustion was required. *Id*. at 869-70. In *Turner*, the plaintiff herself moved to dismiss her PRRA claim after conceding that she had not exhausted her administrative remedies. 2009 WL 1210624 at *1 fn. 1. Plainly, neither court dismissed the PRRA claim for its own lack of jurisdiction.

Defendants also cite *Smith v. Indianapolis Public Schools*, 916 F. Supp. 872 (S.D. Ind. 1995), an Individuals with Disabilities

---

[6]Indeed, the *Anderson* defendant moved to dismiss the plaintiff's PRRA claim under Rule 12(b)(6), not Rule 12(b)(1).

Education Act (IDEA) case. In *Smith*, the court dismissed the plaintiff's IDEA claim under Rule 12(b)(1) on the ground that the plaintiff's failure to exhaust administrative remedies deprived it of subject matter jurisdiction. The court explained that its original subject matter jurisdiction claim was expressly circumscribed by the language of IDEA: "section 1415(e) predicates federal jurisdiction to hear an IDEA claim on a parent or guardian first having exhausted his or her administrative remedies under state statutes and regulations." *Smith*, 916 F. Supp. at 876. Because the plaintiff concededly had not done so, dismissal was appropriate under Rule 12(b)(1). But the jurisdictional limitations of IDEA have no bearing on this case.

"Failure to exhaust administrative remedies does not deprive a court of jurisdiction." *Perez v. Wisconsin Dept. Of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). As the Seventh Circuit has explained, statutes that make exhaustion "a precondition to suit," provide defendants with the right to demand resolution of the exhaustion issue prior to an adjudication on the merits, which judges must respect if invoked. *Id*. at 536. This right may be waived or forfeited this right, however; courts need not examine the exhaustion issue "if the defendant is happy to contest the suit on the merits." *Id*. at 536. Only where "the step omitted before the suit is essential to the existence of the claim, or to ripeness, and therefore to the presence of an Article III case or

controversy" is failure to plead exhaustion of remedies a jurisdictional defect. *Id*. at 535-36. Defendants have offered no basis for concluding that that is the case here.

V. Conclusion

For the foregoing reasons, defendants' motion is granted in part. Count V of plaintiff's complaint is dismissed.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: August 24, 2010